**IN THE UNITED STATES DISCOURT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| **UATP MANAGEMENT, LLC,** | |
| *Plaintiff,* | |
| v. | **Case No. 4:26-cv-1069** |
| **AUBREY HALL; JUMP KATY, LLC; and JUMP UAAP TX, LLC,** | |
| *Defendants.* | |

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER, TEMPORARY
INJUNCTION, AND PERMANENT INJUNCTION**

Plaintiff UATP Management, LLC ("UATP" or "Plaintiff") files this Complaint for

Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against its former

franchisee Defendant Jump Katy, LLC ("Jump Katy") and its guarantors Defendants Aubrey Hall

("Mr. Hall") and Jump UAAP TX, LLC ("Jump UAAP") (together, "Defendants," each a

"Defendant") and for cause of action shows:

**NATURE OF THE ACTION**

1.      As described in more detail below, Defendants owned and operated an Urban Air

Adventure Park franchise in Katy, Texas, pursuant to a Franchise Agreement with franchisor

UATP, and subject to its terms. This action arises out of Defendants' violation of their post-

termination obligations under the Franchise Agreement and related agreements, after an arbitrator

found that Defendants had fraudulently underreported their sales to UATP (thereby reducing

royalties paid to UATP) and issued an arbitration award permitting UATP to terminate the

Franchise Agreement.[1] Upon termination, which occurred on January 27, 2026, Defendants were required, among other things, to immediately (i) cease using UATP's federally registered trademarks and other intellectual property, and (ii) cease owning, maintaining, advising, operating, engaging in, being employed by, making loans to, investing in, providing any assistance to, or having any interest in (as owner or otherwise) or relationship or association with, any Competitive Business (as defined in the Franchise Agreement). They did not do so and, instead, improperly carried on, business-as-usual, using UATP's signage, logos, and other intellectual property.

2.      Because of their refusal and failure to comply with these obligations, Defendants left UATP no option but to bring this lawsuit. UTAP now seeks, among other things, a temporary restraining order, preliminary and permanent injunction, and/or specific performance (i) enforcing the post-termination obligations set forth in the Franchise Agreement and related agreements with UATP, and (ii) enjoining Defendants' wrongful and unlawful use of UTAP's federally registered trademarks and other intellectual property.

## PARTIES

3.      Plaintiff UATP is a limited liability company formed under the laws of the state of Texas, with its principal place of business located at 2350 Airport Freeway, Suite 505, Bedford, Texas 76022.

4.      Defendant Aubrey Hall ("Mr. Hall") is a resident and citizen of Texas and can be served with process at 14000 McAlister Road, Conroe, Texas 77302.

5.      Defendant Jump UAAP TX, LLC is a foreign entity doing business in Texas and is therefore required to maintain a resident agent for service of process, but has failed to do so. Accordingly, pursuant to Texas Civil Practice and Remedies Code Section 17.044, the Texas

---

[1]      A Texas state court has confirmed and entered judgment on that arbitration award.

Secretary of State is an agent service of process for Jump UAAP TX, LLC. Jump UAAP TX, LLC can therefore be served with process by serving the Texas Secretary of State at Secretary of State, Service of Process, P.O. Box 12079, Austin, TX 78711-2079.

6.     Defendant Jump Katy, LLC ("Jump Katy") is a limited liability company formed under the laws of the state of Wyoming whose sole member is Jump UAAP. Jump Katy's registered agent is InCorp Services, Inc., located at 815 Brazos Street, Suite 500, Austin, Texas 78701.

## JURISDICTION

7.     This action arises under the Lanham Act, 15 U.S.C. § 1051 et seq., and under common law.

8.     This Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

9.     This Court has personal jurisdiction over each Defendant because each Defendant is either conducting business and maintaining operations in this forum or is an individual who has sufficient minimum contacts with this forum so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(1) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this district.

## FACTUAL BACKGROUND

**A.    UATP and its Registered Trademarks**

11.    Plaintiff UATP is the franchisor of the well-known "Urban Air Adventure Parks," which feature trampolines, foam pits, warrior/ninja courses, soft play, climbing walls, zip lines, Sky Rider®, indoor skydiving, dodge ball, rock climbing, digital climbing walls, arcades, bowling, go karts, bumper cars, indoor sky diving, mini golf, laser tag, and related activities. There are approximately 205 Urban Air Adventure Parks in the United States, with another 200 under development. (Declaration of Stephen Polozola ["Polozola Decl."] ¶ 3.)

12.    UATP has developed, and is the sole and exclusive owner of, a distinctive and uniform system (the "UATP System") relating to the establishment and operation of UATP indoor trampoline and adventure park businesses. UATP parks feature, among other things, wall-to-wall trampolines, foam pits, and related activities.

13.    To identify the source, origin and sponsorship of UATP parks, and to distinguish those parks, products and services from those established, made, offered and sold by others, UATP has extensively used certain trademarks, service marks, trade names, logos, emblems and indicia of origin, including, but not limited to, the federally registered names and marks (the "UATP Marks").[2]

14.    The UATP Marks include, among many others:

| Proprietary Mark | Registration Number | Registration Date | International Class |
|---|---|---|---|
| Urban Air Trampoline Park (standard character) | 4807427 | September 8, 2015 | 41 |
| Urban Air Adventure Park (standard character) | 5371211 | January 2, 2018 | 25, 41 |
| Urban Air (standard character | 6067884 | June 2, 2020 | 25, 41 |

---

[2]    UATP has a perpetual license from its affiliate, UATP IP, LLC, to use the UATP Marks and sublicense them to others.

15.     The UATP Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registrations of the UATP Marks continue in full force and effect, and all those eligible are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

16.     UATP has given notice to the public of the registration of the UATP Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that UATP remains the exclusive user and sublicensor of the UATP Marks.

17.     UATP has continuously used the UATP Marks in interstate commerce in connection with the promotion, operation, and franchising of Urban Air Adventure Parks and the promotion and sale of the products and services they offer throughout the United States, including the State of Texas, since the dates of their registration.

18.     By virtue of UATP's long-standing and continuous use of the UATP Marks, UATP has valid and enforceable trademark and service mark rights in and to the UATP Marks.

19.     UATP has the exclusive right to use and sublicense the UATP Marks and derivations thereof, as well as the distinctive UATP System with which franchisees offer UATP-authorized products and services to the public under the UATP Marks. Pursuant to franchise agreements entered into by and between UATP and its authorized and approved franchisees, UATP—in its full and unfettered discretion— grants franchises to qualified persons to own and operate Urban Air Adventure Parks using the UATP Marks and the UATP System, but only in such manner and at such locations as are expressly authorized by UATP, and subject to the terms of written franchise agreements.

20.    UATP and its franchisees use the UATP Marks as the marks and trade identity by which the products and services offered by UATP and its franchisees are distinguished from other parks and the products and services made and sold by them.

21.    UATP and its authorized franchisees have extensively advertised and promoted UATP parks and the products and services they offer under the UATP Marks throughout certain portions of the United States, including Texas, and through various media. As a result of such efforts and the considerable money spent in connection therewith, the products and services offered by UATP and its franchisees under the UATP Marks have met with widespread public approval and have established demand and goodwill among consumers throughout certain portions of the United States, including Texas.

**B.    <u>The Franchise Agreement</u>**

22.    With four exceptions, all Urban Air Adventure Parks are operated by independent franchise owners pursuant to written franchise agreements with UATP, subject to the terms of those agreements. (*Id*. at ¶ 4)

23.    Defendant Aubrey Hall ("Mr. Hall") formerly operated (through his wholly-owned entity Jump UAAP),[3] or had an interest in, eleven Urban Air Adventure Parks, including one located at 25307 Kingsland Blvd., in Katy, Texas (the "Katy Park").

24.    The Katy Park operated pursuant to a franchise agreement (the "Franchise Agreement") between Defendant Jump Katy and UATP, and subject to its terms. (A true and correct copy of the Franchise Agreement, with attachments and amendments, is attached as Exhibit

---

3    Mr. Hall is the sole member of UAAP, which is Jump Katy's sole member according to the operating agreement Mr. Hall provided UATP. (Polozola Decl. ¶ 7.)

1 to the Polozola Decl.) Mr. Hall and Jump UAAP guaranteed all of Jump Katy's obligations under the Franchise Agreement.[4]

25.     As an Urban Air Adventure Park franchisee, Defendants were privy to, and granted a limited license to access and use, a wide variety of confidential and proprietary information belonging to UATP to enable them to operate their business. Section 14.B of the Franchise Agreement provides:

> You acknowledge that you and your Owners will receive valuable specialized training and Confidential Information, including, without limitation, information regarding the operational, sales, promotional, and marketing methods and techniques and trade secrets of Franchisor and the System.

26.     Defendants further agreed to use that information only for purposes of operating their franchise in accordance with the Franchise Agreement, and acknowledged that they would be prohibited from using it in a competing business or otherwise after the Franchise Agreement expired or was terminated. (Franchise Agreement §§ 9, 14.A; *see also* Attachment D-2 to the Franchise Agreement signed by Aubrey Hall (Confidentiality and Non-Competition Agreement).)

27.     Defendants similarly agreed that customer information and lists belonged to UATP and that they could not use this information or solicit or market to their (or UATP's) former customers or prospective customers after expiration or termination. (*Id*.)

28.     Like all Urban Air Adventure Park franchise agreements, the Franchise Agreement required the franchisee to pay royalties and other amounts to UATP based on gross sales. (Franchise Agreement § 6.) If Jump Katy failed to pay its royalties in full, or if it underreported its

---

4     A copy of Mr. Hall's Undertaking and Guarantee is included in Attachment D to the Franchise Agreement; Jump UAAP signed as guarantor in the Consent to Transfer and Fourth Amendment to Franchise Agreement.

gross sales to reduce the royalties paid to UATP, UATP had the contractual right to terminate the Franchise Agreement. (Franchise Agreement § 18.)

C.   **UATP Discovers Defendants' Pervasive Fraud and Underreporting, Commences Arbitration, and Obtains Final Judgment Permitting Termination**

29.   In June 2024, UATP advised Mr. Hall and Jump Katy that it would be reviewing and auditing Jump Katy's financial records. Based on a review of these records, UATP's auditor determined that Jump Katy had dramatically understated its gross sales by almost $700,000 for the twenty-five-month period audited. This breach of trust went to the root of the parties' agreement.

30.   In September 2024, armed with this irrefutable evidence of wrongdoing, UATP filed an arbitration before the American Arbitration Association ("AAA") styled *UATP Management, LLC v. Aubrey Hall, et al.*, AAA Case No. 01-24-0007-7538 (the "Arbitration"), seeking damages and declaratory relief.[5] On October 14, 2025, after an evidentiary hearing, the arbitrator issued a final arbitration award (the "Final Award") in UATP's favor, declaring that UATP had the right to terminate the Franchise Agreement and awarding damages. (A true and accurate copy of the Final Award is attached as Exhibit 2 to the Polozola Decl.) In doing so, the arbitrator specifically found, based on the evidence, that Jump Katy "did not disclose gross sales as required," that it "knew [it] was not disclosing gross sales as required," and that Mr. Hall "personally participated in the fraud." (Final Award, p. 12, ¶¶ 87-88.)

31.   On December 3, 2025, the District Court for Tarrant County, Texas, 48th Judicial District, issued judgment (the "Judgment") confirming the Final Award. (A true and correct copy of the Judgment is attached as Exhibit 3 to the Polozola Decl.)

---

5   UATP found similar pervasive underreporting at Mr. Hall's other locations, and the Arbitration also included claims relating to those other locations.

32.     On January 27, 2026, in accordance with the Final Award and Judgment, UATP

sent a written notice terminating the Franchise Agreement. (A true and correct copy of this notice

is attached as Exhibit 4 to the Polozola Decl.) That triggered the franchisee's obligation to comply

with multiple, express post-termination obligations, including an obligation not to compete. More

specifically, Section 14.B of the Franchise Agreement provides, among other things, that, "for a

two-year continuous and uninterrupted period (which shall be tolled during any period of

noncompliance) commencing upon expiration or termination of this Agreement," Jump Katy,

Jump UAAP, and Mr. Hall could not:

> [o]wn, maintain, advise, operate, engage in, be employed by, make loans to, invest
> in, provide any assistance to, or have any interest in (as owner or otherwise) or
> relationship or association with, any Competitive Business other than a URBAN
> AIR TRAMPOLINE PARK Franchised Business operated by you or your
> Affiliates pursuant to a then-currently effective Franchise Agreement with [UATP],
> at any location that (i) is, or is intended to be, located at the location of any former
> URBAN AIR TRAMPOLINE PARK™ Franchised Business; (ii) is within a 25-
> mile radius of your former Franchised Business location; or (iii) is within a 25-mile
> radius of any other URBAN AIR TRAMPOLINE PARK™ Franchised Business
> operating under the System and Proprietary Marks in existence or under
> development at the time of such termination or transfer.

33.     In Section 14.G of the Franchise Agreement, Defendants further acknowledged that

UATP would be entitled to an injunction if they violated their non-compete obligations. Section

14.G states:

> You and each Owner acknowledge that the violation of any covenant contained
> in this Section 14 would result in immediate and irreparable injury to Franchisor
> for which there is no adequate remedy at law. The parties acknowledge and agree
> that, in the event of a violation of any covenant contained in this Section 14,
> Franchisor shall be entitled to seek injunctive relief to restrain such violation in
> accordance with the usual equity principles. The party in violation of any
> foregoing covenant shall reimburse Franchisor for any costs that it incurs
> (including attorneys' fees) in connection with enforcement of the provisions
> contained in this Section 14.

34.     The Confidentiality and Non-Competition Agreement that Mr. Hall executed

(Attachment E to the Franchise Agreement) similarly states, among other things, that "I am aware

that my violation of this Agreement will cause Franchisor and the Franchisee irreparable harm;

therefore, I acknowledge and agree that the Franchisee and/or Franchisor may apply for the issuance of an injunction preventing me from violating this Agreement."

**D.**    **UATP Discovers Continued Operations at the Jump Katy Location**

35.    UATP has now discovered that, just as Defendants flouted their gross sales reporting obligations, they are flouting their post-termination non-compete and related obligations.

36.    Despite the Franchise Agreement's January 27, 2026 termination and having agreed, in Section 14.B of the Franchise Agreement, not to "[o]wn, maintain, advise, operate, engage in, be employed by, make loans to, invest in, provide any assistance to, or have any interest in (as owner or otherwise) or relationship or association with, any Competitive Business"[6] after termination, Defendants continue to operate at the Katy Park location in competition to UATP as if it were business as usual.

37.    Essentially, nothing has changed inside the location, and the business continues to operate, presumably serving (and soliciting and marketing to) the same customers and prospective customers as when it operated as an authorized Urban Air Adventure Park. On Friday, February 6, 2026, before normal operating hours:

- All point-of-sale ("POS") terminals were in place;

- all attractions were intact;

- the front desk and office were fully stocked;

- the café had product in all refrigerators and freezers;

- the video games were on; and

---

6    The Glossary of Terms, Attachment A to the Franchise Agreement, defines "Competitive Business" as "any business or enterprise that engages in, or grants franchises or licenses for, the operation of indoor trampoline park businesses featuring wall-to-wall trampolines, foam pits, and related activities." Mr. Hall also separately agreed to this prohibition in Attachment D-2 to the Franchise Agreement, the "Confidentiality and Non-Competition Agreement."

- the heating and air conditioning system appeared to be working, as the building was a comfortable temperature.

38.    Later that same day, Friday, February 6, 2026, during normal operating hours:

- The location was open for business and operating the same attractions that Urban Air Adventure Parks operate, including trampolines, foam pits, and related activities;

- cars were in the parking lot;

- customers were checking in, paying for entry to the park, and executing liability waivers; and

- customers, in what appeared to be family groups, were playing on the attractions and eating in the café.

(Hersh Decl. ¶ 5.)

39.    During this visit, photographs and videos were taken to document Defendants' activities, including these photographs of customers paying for entry and enjoying the attractions:









(Exhibit 1 to the Hersh Decl.)

40.    It was also observed during that visit that Defendants were still displaying exterior highly visible and illuminated Urban Air Adventure Park signage and thereby continuing to use UATP's trademarks and other intellectual property and holding themselves out as authorized Urban Air Adventure Park franchisees, even though their license to use that intellectual property ended when the Franchise Agreement was terminated. (*See, e.g*., Franchise Agreement §§ 13.A, 13.C, 19.A.)



13

(*Id.*)

41.     These activities violate Defendants' post-termination obligations under the Franchise Agreement and related agreements as well as their obligations not to use UATP's confidential or proprietary systems and information to run a competing business.[7]

42.     But this is not Mr. Hall's only effort to harm UATP after losing in arbitration and in court. As part of the Final Award and Judgment, Defendants (including Mr. Hall) owe UATP over eight million dollars, all of which remains unpaid. (Polozola Decl. ¶¶ 11, 12.) UATP has also just learned that, apparently out of spite, Mr. Hall has vandalized and destroyed property at his other terminated locations. (Hersh Decl. ¶ 9.) For example, UATP believes that Mr. Hall has significantly damaged his former Urban Air Adventure Park in Gilbert, Arizona. (Polozola Decl. ¶ 25.) On December 15, 2026, a representative of UATP inspected the park and observed that (i) the park was a complete disaster with trash thrown all about, (ii) computers, televisions, POS equipment, and other items had been removed; (iii) laser tag vests, Sky Rider and ropes course harnesses and related equipment were missing, and (iv) go-kart charging stations, batteries, shrouds, and motors had been removed. (*Id.* ¶ 26.) Additionally, in his Pearland, Texas location, Mr. Hall has removed televisions, POS equipment, and other items from attractions, defaced signage and walls, stolen go-kart batteries, removed go-kart shrouds and motors, and moved kitchen equipment to the go-kart track likely damaging it. (Hersh Decl. ¶¶ 8-9.) This needless destruction has unnecessarily increased the time and cost to restore these parks to brand standards

---

[7]     It is obvious that Defendants, and not some random third parties, are behind these operations. For example, Jump Katy is the tenant on the lease for the location, the liability waiver currently used, which is substantially similar to the one Jump Katy used when it was an Urban Air Adventure Park franchisee, identifies "Jump Katy" as the released party, and Mr. Hall is the sole member of Jump UAAP, which is the sole member of Jump Katy. (Polozola Decl. ¶¶ 7,8.)

for use in the Urban Air Adventure Park system, irreparably harmed ongoing and potential customer relationships, and damaged UATP's goodwill and brand reputation.[8]

43.     Defendants' continued breach of Section 14.B will cause UATP immediate and irreparable harm. (Polozola Decl. ¶ 20.) Defendants' breaches of contract and violation of the Lanham Act, interfere with UATP's ongoing and potential customer relationships and UATP's goodwill and brand reputation. (Polozola Decl. ¶¶ 19, 20, & 21.) Defendants' continued breach of their contractual obligations not to compete (*e.g.*, Section 14 of the Franchise Agreement) threaten UATP's goodwill, reputation, place in the market, and franchise system as a whole. (Polozola Decl. ¶¶ 20.) Defendants also have been and will continue to improperly use the confidential and proprietary UATP systems and information that give UATP franchisees a competitive advantage. (Polozola Decl. ¶¶ 20-21.) UATP will also face difficulty refranchising in the area surrounding the Katy Park. These threats are significant, imminent, and cannot be remedied by money damages. (Polozola Decl. ¶¶ 20-21.) And Defendants' holding out the Katy Park as an Urban Air Adventure Park location even though UATP no longer sponsors or controls the park means that UATP no longer possesses control over its valuable trademarks or its reputation.

44.     Because these activities violate Defendants' enforceable non-compete obligations, and because such continued violations will cause UATP immediate and irreparable harm, injunctive relief is appropriate and necessary.

45.     UATP and Defendants expressly agreed that injunctive relief would be appropriate if they breach Section 14.B, under Section 14.G of the Franchise Agreement which provides:

> You and each Owner acknowledge that the violation of any covenant contained in this <u>Section 14</u> would result in immediate and irreparable injury to Franchisor for which there is no adequate remedy at law. The parties acknowledge and agree that, in the event of a violation of any covenant contained in this <u>Section 14</u>, Franchisor

---

[8]     All of the goodwill relating to the franchise belongs to UATP, not Defendants. (*See, e.g.*, Franchise Agreement §§ 13, 19.A.)

shall be entitled to seek injunctive relief to restrain such violation in accordance with the usual equity principles.

46.    All the conduct described above breaches Section 14.B of the Franchise Agreement and further violates Section 7 of the separate Confidentiality and Non-Competition Agreement that Mr. Hall signed in connection with the Franchise Agreement. (Polozola Decl. Ex. 1, Attachment D-2, § 7). That Section 7 is similar in relevant respects to Section 14.B.

47.    Mr. Hall also expressly agreed in Section 10 of the Confidentiality and Non-Competition Agreement that injunctive relief would be appropriate: That Section provides:

> Franchisor is a third-party beneficiary of this Agreement and may enforce it, solely and/or jointly with the Franchisee. I [Mr. Hall] am aware that my violation of this Agreement will cause Franchisor and the Franchisee irreparable harm; therefore, I [Mr. Hall] acknowledge and agree that the Franchisee and/or Franchisor may apply for the issuance of an injunction preventing me [Mr. Hall] from violating this Agreement[.]

**E.    Defendants' Infringement of Plaintiff's Marks**

48.    Notwithstanding the termination of the Franchise Agreement and related agreements, including Mr. Hall's separate Confidentiality and Non-Competition Agreement, Defendants continue to use the UATP Marks and the UATP System in connection with the operation of the Katy Park, to market and promote the park through the use of the UATP Marks, and to hold the park out to the public as an authorized UATP park when it is not.

49.    Defendants' post-expiration use of the UATP Marks is without the license or consent of UATP and has caused or is likely to cause mistake, confusion, or deception in the minds of the public as to source, affiliation, and sponsorship.

50.    In addition to the fact that both UATP and Defendants offer the identical products at their park, the products provided by Defendants using the UATP Marks are offered to the same class of consumers as those who patronize authorized UATP parks. Upon seeing the familiar UATP Marks through Defendants' unauthorized use thereof, consumers will be deceived into

concluding that the park, and the products and services offered in connection therewith, are subject to UATP's supervision, are sponsored or endorsed by UATP, and bear the UATP Marks pursuant to UATP's authority and permission.

51.     So long as Defendants continue to use the UATP Marks in connection with the operation of the Katy Park, consumers have no practical way of knowing that Defendants are operating the park without UATP's authorization, sponsorship, or endorsement. As a result, any consumer dissatisfaction with the Katy Park, or with the products and services offered in connection therewith, will be attributed to UATP and the entire UATP network.

52.     Defendants have received actual notice of the violation and infringement of the UATP Marks and has constructive notice of UATP's rights in the UATP Marks and the registrations thereof pursuant to 15 U.S.C. § 1072. Defendants' continued infringement is willful, malicious, fraudulent and deliberate.

53.     UATP has at all times complied with and fully performed all of its obligations under the Franchise Agreement.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (AGAINST ALL DEFENDANTS)

54.     Plaintiff incorporates herein the paragraphs set forth above.

55.     In the Franchise Agreement, Defendants explicitly agreed not to "[o]wn, maintain, advise, operate, engage in, be employed by, make loans to, invest in, provide any assistance to, or have any interest in (as owner or otherwise) or relationship or association with, any Competitive Business." (Polozola Decl. Ex. 1, §14.B & Attachment A).

56.     Section 14.B of the Franchise Agreement is enforceable and prohibits Defendants from doing precisely what they are doing: continuing business as usual at the Jump Katy location despite termination.

57.     The Franchise Agreement, of which Section 14.B is a part, is "an otherwise enforceable agreement." It is a binding, valid, and duly executed contract under which UATP and Defendants exchanged mutual promises, with Jump Katy as franchisee and Mr. Hall and Jump UAAP as Jump Katy's guarantors. (Polozola Decl. ¶¶ 6-8 & Ex. 1.)

58.     Section 14.B's limitation on scope of activity is reasonable and necessary to protect UATP's goodwill and other business interests. Section 14.B only restrains Defendants' scope of activity so they may not "[o]wn, maintain, advise, operate, engage in, be employed by, make loans to, invest in, provide any assistance to, or have any interest in (as owner or otherwise) or relationship or association with, any Competitive Business," defined to mean "any business or enterprise that engages in, or grants franchises or licenses for, the operation of indoor trampoline park businesses featuring wall-to-wall trampolines, foam pits, and related activities." (Polozola Decl. Ex. 1, §14.B & Attachment A). This limitation is reasonable and necessary to protect UATP's goodwill and other business interests. (Polozola Decl. ¶ 15.)

59.     Section 14.B's time limitation is reasonable and necessary to protect UATP's goodwill and other business interests. Section 14.B only restrains Defendants for a "two-year continuous and uninterrupted period (which shall be tolled during any period of noncompliance) commencing upon expiration or termination of this Agreement." (Polozola Decl. Ex. 1, § 14.B.) This limitation is reasonable and necessary to protect UATP's goodwill and other business interests. (Polozola Decl. ¶ 16.)

60.     Section 14.B's geographic limitation is likewise reasonable and necessary to protect UATP's goodwill and other business interests. Section 14.B only restrains Defendants: (i) at the current or intended location of an Urban Air Adventure Park; or (ii) within 25 miles of Jump Katy's former park or another Urban Air Adventure Park. (Polozola Decl. Ex. 1, § 14.B.). This limitation is reasonable and necessary to protect UATP's goodwill and other business interests. (Polozola Decl. ¶ 17.)

61.     Defendants breached the Franchise Agreement and related agreements with UATP, including Mr. Hall's separate Confidentiality and Non-Competition Agreement, for which they received valuable consideration in the form of rights to operate, or have an interest in the Katy Park. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, substantial and irreparable harm for which there is no adequate remedy at law due to Defendants' disregard for the provisions of the Franchise Agreement and related agreements with UATP and their wrongful competition with Plaintiff and its authorized franchisees, and their interference with the relationships between UATP's and its franchisees' former, present, or prospective clients, all of which has  damaged, and continues to damage, UATP's brand reputation and goodwill.

**COUNT II**
**LANHAM ACT - TRADEMARK INFRINGEMENT**
**(AGAINST ALL DEFENDANTS)**

62.     Plaintiff incorporates herein the paragraphs set forth above.

63.     Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the UATP Marks, and Defendants' sale, offering for sale, distribution or advertising of goods and services under the UATP Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(l).

64. As a direct and proximate result of Defendants' infringement, UATP has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

65. UATP has no adequate remedy at law because the UATP Marks are unique and represent to the public UATP's identity, reputation, and goodwill, such that damages alone cannot fully compensate UATP for Defendants' misconduct.

66. Unless enjoined by the Court, Defendants will continue to use and infringe the UATP Marks, to UATP's irreparable injury. This threat of future injury to UATP's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the UATP Marks and to ameliorate and mitigate UATP's injury.

## PRAYER FOR RELIEF

Plaintiff prays for a Temporary Restraining Order and, on full hearing on this matter, a temporary injunction providing as follows:

(a) Defendants Aubrey Hall, Jump Katy, LLC, and Jump UAAP TX, LLC, including Defendants' agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with any of them or under their authority, are enjoined from owning, maintaining, advising, operating, engaging in, being employed by, making loans to, investing in, providing any assistance to, or having any interest in (as owner or otherwise) or relationship or association with, any Competitive Business (as defined in the Franchise Agreement) at any location that (i) is, or is intended to be, located at the location of any former URBAN AIR TRAMPOLINE PARK™ Franchised Business, including, without limitation, 25307 Kingsland Blvd., in Katy, Texas; (ii) is within a 25-mile radius of 25307 Kingsland Blvd., in Katy, Texas; or (iii) is

within a 25-mile radius of any other URBAN AIR TRAMPOLINE PARK™ Franchised Business operating under the System and Proprietary Marks as of January 27, 2026.

(b)     Defendants Aubrey Hall, Jump Katy, LLC, and Jump UAAP TX, LLC, including Defendants' agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with any of them or under their authority, are enjoined from direct or indirect disclosure or use of Plaintiff's confidential, proprietary, or trade secret information;

(c)     Defendants Aubrey Hall, Jump Katy, LLC, and Jump UAAP TX, LLC, including Defendants' agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with any of them or under their authority, are enjoined from calling on, soliciting, selling to, servicing, or otherwise doing business with any of UATP's customers or former customers;

(d)     Defendants Aubrey Hall, Jump Katy, LLC, and Jump UAAP TX, LLC, including Defendants' agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with any of them or under their authority, are enjoined from using UATP's trademarks, logos, and other intellectual property; otherwise infringing the UATP Marks or using any similar designation, alone or in combination with any other components; passing off any products or services as those of UATP or its authorized franchisees; causing a likelihood of confusion or misunderstanding as to the source or sponsorship of business, products, or services; and causing a likelihood of

confusion or misunderstanding as to affiliation, connection, or association with UATP and its franchisees or any of UATP's products or services;

(e)    Defendants Aubrey Hall, Jump Katy, LLC, and Jump UAAP TX, LLC, including Defendants' agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with any of them or under their authority, are enjoined from destroying or deleting of any documents, evidence, or record, electronic or otherwise, that relates to any of the matters implicated by this lawsuit or pertaining to Plaintiff, including but not limited to all hard drives, flash drives, backups, CDs, DVDs, archives, and other possible sources of stored metadata or information.

In addition, Plaintiff requests whatever further relief, in law and in equity, to which it is entitled, including, but not limited to:

(a)    Upon final trial, judgment against Defendants for full permanent injunctive relief;

(b)    Such other and further relief to which Plaintiff may show themselves justly entitled.

Dated: February 10, 2026                    Respectfully submitted,

*/s/ Gray Stratton*
Gray Stratton
Texas Bar No. 02449590
Brett Solberg
Texas Bar No. 24070651
**DLA PIPER LLP (US)**
845 Texas Ave, Suite 3800
Houston, TX 77002
T: (713) 425-8400
F: (713) 425 8401
gray.stratton@us.dlapiper.com
brett.solberg@us.dlapiper.com

**ATTORNEY FOR PLAINTIFF UATP MANAGEMENT, LLC**